Good morning. May it please the court. My name is Amelia Bizzaro. I represent the appellant Melanie Ochs. I would like to reserve two minutes of my time for rebuttal and I'll keep an eye on the clock. All right, thank you counsel. The jury instructions compelled the jury to convict Melanie Ochs of first-degree murder even if it believed her defense because it incorrectly defined the term child abuse. Under these faulty instructions all roads led to counsel. You've got limited time and I want to tell you, at least preliminarily, I think your argument of why the instructions were incorrect is well taken. And so I'm most interested in this case in the prejudice issue. I need your help on two parts of that. First, how do we review the Nevada Supreme Court's no prejudice decision? The brief makes an argument that this court reviews it. No, I know you argue that in your brief. But I think even if the court finds that to be a merits decision, it's an unreasonable decision. And so de novo review would apply in any event. Okay. So then my next question goes to whether we get, we then have to look for Brecht prejudice. Yes. So whether we're reviewing it for unreasonableness or for Brecht prejudice, what do you do with the fact that the jury was instructed that the death could not have been could not have been accidental in order to constitute the predicate felony for first degree murder and and the instruction that the your client had to have the specific intent. Those two seem to mitigate any problem in my mind. Address them for me because that's that's the heart of the case for me. Thank you, Your Honor. In terms of the specific intent, it is true that the jury instruction said that she had to have the specific intent to commit child abuse in order for it to be the proper predicate for first degree murder. The problem is the child abuse part, as the court noted. But can you have a specific intent to do something negligent? You can't understand. So to me that and combined with the part that says the death can't be accidental and the way the case was tried, which was frankly your your side said it was an accident and the other side says it wasn't. I wonder whether you put those all together. We we we don't arrive arrive at prejudice under whichever standard we look at it. I think the problem is that there's no way to determine what theory that the jury went with because of the nature of the defense being accidental. The jury was presented and I think the order of the instructions matters as well. So if the jury had properly been instructed on the definition of child abuse that was limited just to physical injury of a non-accidental nature and it landed at first degree murder, we would know that the jury sided with the government's argument. If the No, but now you're talking about I'm saying I think the instructions were erroneous for all the reasons you argue. Trying to figure out whether in this trial it made a difference and the way the case was tried, at least as I read the record, is your side said this was a terrible accident. We put him on top of the on top of the washer and he fell down. The other side said no it had to be it had to be blunt force trauma of a different kind because our experts say so. The state never really argued that that an accident would give rise to first-degree murder and so I'm trying to look at all that together and figure out whether this instruction which I concede to your argument would have allowed a jury to arrive at an incorrect conclusion whether it really did make a difference. The defense was, you're right your honor, that it was an accident and she stepped away and this baby fell and that was the cause of the injury. Two experts on the defense supported that. And the government of course said an accident is just simply not possible. The only thing it had going for it was the the physical evidence. Well, they had four experts. They had four experts. You had two, they had four. It's for the jury to decide. The problem for me is in part the closing arguments. In three different places in the closing arguments, it's true that the government never said accident, it could be first-degree murder, but the way they constantly and consistently define child abuse encompassed the idea of accident because it encompassed negligent behavior. And so the prosecutor in closing arguments kept saying to the jury, child abuse can be multiple things amongst which is negligence. But it could for second-degree murder, correct? Correct. And in the... But second-degree murder wasn't charged. That's part of the first-degree, the information was only for first-degree murder, not second-degree murder, not open murder. That's correct, Your Honor. It wasn't until four days after the verdict that the government amended the information to add this open murder charge that brought all these things in. So when the defense started this jury trial, it was simply first-degree murder, as Your Honor's pointed out, and it was only under two theories. And that's what the defense was built for. I thought the jury was instructed on second-degree murder. It was, Your Honor. That's the problem. Right before the case is going to the jury, the state adds this new theory of liability. But you don't... You're not objecting on habeas to second-degree murder having been included in the instructions, are you? I'm saying that she was only charged with first-degree murder. I know what you're saying. I'm asking whether the amendment is an issue before us on habeas. It's not a separate claim. That's true. This is just about the jury instructions, and the reply brief does, I think. But looking at the harm, you know, when we do the prejudice analysis, we look at how the trial unfolded and why and how. So the fact that the... To me, the fact that the information was amended to open murder after the verdict came in was some indication that the government was aware that there was some prejudice there. I think they also were aware before the trial even began that the defense was going to provide this accident because the prosecutor made a comment to that effect before the trial even began. And in this case, the facts of what happened before Ms. Oaks got into her house with her children is undisputed, and it supports her defense. That is that she took her two children and the baby to a bookstore. They spent the morning there. They went to McDonald's. They were in the driveway kind of finishing their lunch. A neighbor pops over, sees the baby, well cared for, happy, finishing their lunch. The baby goes to the bathroom. They gather everybody into the house to change the diaper. And then this incident occurs in the chaos of coming into the house. How long did the jury deliberate? The jury deliberated for just under five hours, Your Honor. Ms. Bizarro, this is Judge Lynn. What do you make of this sentence in Instruction 10, the very last sentence that says abuse or neglect means physical or mental injury of a non-accidental nature? In other words, it's defining abuse or neglect as being non-accidental, which to me just adds another layer of confusion on this question of prejudice. I think it is confusing, Your Honor. It is the incorrect definition. The correct definition of child abuse simply is physical injury of a non-accidental nature. So pulling in neglect, pulling in mental, and the instructions go to this idea of... Then it's an accurate instruction, is it not? I'm sorry, Your Honor? If abuse or neglect means physical injury of a non-accidental nature, this is say or mental, but there wasn't a claim of mental injury in this case. That's correct. The instruction is accurate. This part of the instruction is accurate. The difficulty is the definition of child abuse in general. But is it accurate if it includes neglect? Argument is that this entire instruction is inaccurate. But is it accurate, that sentence, is it accurate if it includes neglect? It is not, Your Honor. It's also not accurate to the extent the paragraph above describes anything about placing the child in a situation where harm may fall him. That's also completely inaccurate. I thought that, but I want to go back to this. Can you have negligence that is non-accidental? Can you have negligence that's non-accidental? Your fear in this case was that the jury, given the first half of this instruction, could have convicted your client simply by finding that she was negligent. But you can't have non-accidental negligence, can you? No, because that is a presumption of an intent. It is confusing, but at least that negates the negligence part of it. I think all this confusion, too, goes to the Brecht argument about whether the court can know if it has a grave, I just lost the language, the phrase about whether it can know how the jury land here. And if I could reserve the rest of my time, I certainly want to answer your questions. We took the over your time, but I just wanted to note that the neglect part, we don't know how the jury took that instruction. That's the problem with instructional error, is that once the instruction is erroneous, you have no idea what part of it the jury accepted as guiding its deliberations. We'll give you a minute for rebuttal, because we helped you exceed your time. Thank you, Your Honor. Thank you. We'll hear from the government. Good morning, counsel. Good morning, Your Honor, and may it please the court. I'm Allison Herr from the Nevada Attorney General's Office. I'm here hearing today on behalf of the state of Nevada and the respondent warden. Your Honor, in this case, as you've already pointed out, the petitioners claiming that instruction 10 could have misled the jurors to believe that they could convict a first-degree murder by child neglect based on the fact that the child fell from the machine. But, Your Honor, it's our position that that looks at this in a vacuum. The analysis for instructional error has effectively a three-part standard. First, we have to determine if there was some issue with the order. Then, we have to determine whether or not it in some way infected the entirety of the trial in a way that results in... Well, not if the instructional error is constitutional in nature. In other words, if the instructional error allows someone to be convicted of a crime without a jury finding all the elements, we don't go through the analysis you're talking about. We have to go through either a Chapman analysis or a Brecht analysis. I agree with you that if a jury is ordinarily misinstructed about something and it's not constitutional error, we go through that analysis. But here, the cases all say if the jury is allowed to convict without finding all the elements of the offense, that's constitutional error, and we review it differently. Well, Your Honor, I understand your point, but I think in order to determine whether there has been a constitutional error, we do have to go through the underlying steps. And we do have case law telling us that the evidence as a whole, as well as the statements of the attorneys, can be considered to determine whether they had a... Well, now, but you know you're making a prejudice argument. And I — that's — I — so let me just tell you where I ran parallel — preliminarily in this case. The district court found the instruction was erroneous. I think the district court was entirely correct in that. The tougher question in my mind is whether or not there was prejudice. And I'm trying to figure out from the questions I asked your friend, first, how do we review the State supreme court decision? Your Honor, I believe it is entitled to epidepherence. I think that... Is it — did it — what did it hold? It said no prejudice. Did it hold no Chapman prejudice? It did not — it did not specifically go through a Chapman analysis. Right. Because if it were Chapman prejudice, the burden would be on the State to show that the prejudice was harmless beyond a reasonable doubt. But the Nevada supreme court said Oaks hasn't demonstrated prejudice. So if — if this should have been a Chapman analysis, then they applied the wrong legal standard. Well, I don't know that we know that they didn't apply the right standard, Your Honor. Well, they said — Because there's not a — They said she hasn't shown it. And she's not required to show it if it's constitutional error. You're required to show that it's — it didn't affect the verdict beyond a reasonable doubt. So that's why I'm trying to figure out what they were saying. Can you — can you help me? Your Honor, I don't know that I can clarify that beyond what I've already addressed in my brief. It's our position that the instruction itself is sufficient to — Okay. And I'm asking you to assume for a moment that the instruction is erroneous. Assuming that isn't — and addressing just the prejudice issue, which is what I assume you would prefer that I look at. It's my position that your standard then is to determine whether there's a reasonable probability that the jury would have come up with a different verdict if they had been properly instructed. And in this case — And that's a — that's a Brecht — that's roughly a Brecht analysis. It is roughly a Brecht analysis. Okay. So you agree that we ought to apply a Brecht analysis to this case? Yes. I do believe that Brecht is — And if we apply a Brecht analysis, it's without deference because Brecht analysis is what we do de novo. I'm not sure I completely agree with that, but I'll concede that that is how you've set up the argument. Well, if we don't — if we don't apply the Brecht analysis, then we apply the Chapman analysis, under which you would have the burden to show that there was harmless beyond a reasonable doubt. So you kind of get to pick your poison. I do agree that because this is collateral review, it should be reviewed under Brecht. Yeah. And the Supreme Court's told us it's a two-step analysis. If we — if we give deference to a state court opinion, then we're done and we don't get to Brecht. If we don't give deference to it, we get to Brecht and we do that ourselves. And so tell us why, in this case, you don't think this instruction, which I've asked you to assume was erroneous, meets the Brecht standard. Your Honor, it's our position that there's absolutely nothing about the prosecution's theory of the case, nor any of their arguments that would have changed, had there been a correct instruction, as you have indicated. Well, didn't you — didn't the prosecution argue in closing — I don't have the exact wording in front of me, but you know it and I can find it — that it doesn't matter whether it was an accident? They actually said there was no accident that occurred. The specific language that was given — Go ahead. Sorry, and I'm citing to you the record at 2-6-22. The prosecutor closed by reiterating this baby didn't fall from a washer. This baby had a fatal head injury, an injury where someone whacked him. The baby died from an abusive head injury. He didn't fall off the washer. He was abused. And by making this stark contrast, the jury — Yes, Your Honor, but the statements during closing, and also during the presentation of the case, was simply that there was no accident and that — so that any idea of a neglectful fall from a washer could not be considered by the jury. In fact, the jury was told by the prosecutor, if you believe Ms. Oaks' story about a fall from a washer, you can only find her guilty of involuntary manslaughter or second-degree murder. Well, but those weren't charged. Those weren't charged. That's the problem. Well, actually — Those were not charged. The indictment was amended after the verdict. But at the time that the jury — that the arguments were made to the jury, those options were not available to the jury. That's part of the problem. Your Honor, they, in fact, were available to the jury. They were part of the jury instruction, and they were also, if you look at the verdict plan, the verdict plan lists first, second, and involuntary manslaughter. Don't the instructions have to conform with the indictment? The fact that, administratively, that indictment was not filed until the end, the parties were already on notice, because on the very first day of trial, the prosecutor indicated that if, in fact, Oaks decided to testify and put forth the defense that there was an accidental fall, they would be amending the claim. Well, can a prosecutor amend an indictment after the verdict has come in? What case says that a prosecutor may amend an indictment after the verdict has been rendered? Your Honor, there is nothing under Nevada law. However, I don't agree that this was only amended afterwards. It was amended prior to the verdict. Well, let's explore that. Let's explore that. But it was filed afterwards. Well, but the filing is what effectuates the document. If it had sat in the DA's office and never been filed, it would have never been amended as a matter of law. So — I would agree with that, Your Honor, had they not been put on notice. But there was oral discussion throughout the trial. But no case says that. No case says that you may file an indictment after the verdict comes in if the parties are on notice. And I'm not sure that the record reflects that. But there's no case that says that the DA can amend the indictment once the verdict comes in. Yes, ma'am. I agree with you on that point. There is no case law about that. The case law in the state of Nevada says you can amend up to the time that the jury goes out. Correct. It is my belief that the actions of the parties, by discussing this, by presenting it in the jury's instructions — By presenting what? By presenting the fact that they intended to change the argument during the discussions between counsel and the court, which were part of the record, by then having the court instruct on first degree, second degree, and manslaughter, by including those instructions in the instruction panel. And by that being part of the closing arguments of both the prosecution and the defense, in fact, there was ample notice which overrides any technicality as to whether or not it was filed. There were three charges, at least, that went to the jury. Yes. Three theories. Just three alternative theories. First-degree murder, first-degree murder by — By felony murder. By felony and second-degree murder. Stop. You're answering a question I haven't asked yet. Was second-degree murder a lesser-included offense of any of those? I don't believe it would be deemed to be a lesser-included. I think it would be deemed as an open charge. I'm trying to — I don't know Nevada law, and I don't pretend to. I was just trying to figure out whether or not the second degree could have been given as a lesser-included offense of the others, and you say you don't think so. In the state of Nevada, we charge murder as what we call open murder. But it was not charged as open murder. It was charged as first — the prosecutor has the option of charging open murder, and if the prosecutor charges open murder, then any of these lesser-included could have come in on the verdict. But the prosecutor elected to do first-degree murder in the information, so it's first-degree murder or nothing at all. That's how the information was presented to the Court. That's how the information was filed originally. And so you don't have the option. If the prosecutor files first-degree murder, you don't have the option of the lesser-included. And the Court did not give a lesser-included instruction in this case. They did not. Well, actually, the instructions do specifically go through the alternatives. But generally, when — when a lesser-included offense is on the table, it's specifically labeled as a lesser-included offense of the — of the primary offense. And that was not done in this case. It was not presented as a lesser-included. It was presented as three alternatives. And the Court, in Instruction No. 3, specifically said this defendant is charged with open murder, which goes back to the original question you asked. But he wasn't charged with open murder. That's the problem. He was not — the information did not charge Ms. Oaks with open murder. The original information did not, but the amended information did. Was there any objection raised at trial to the second-degree murder instruction? No, Your Honor, there was not. But under the law, the — the evidence must conform to the indictment, though. Your Honor, again — An indictment may be amended to conform to the evidence, but it has to be done before it goes to the jury. I believe the fact that it was presented to the parties and was made part of the instructions is sufficient to overcome any technicality as to whether or not it was actually filed by the clerk. It is not unusual for the clerk to delay, in Clark County, documents that are filed in open court until the conclusion of everything is done. There's no evidence in the record that this was filed in open court. There's no evidence in the record that this amended indictment was filed in open court. Your Honor — If it's found in open court, it would be in the transcript. Your Honor, I would disagree simply because I think it can be inferred reasonably by the fact that the court instructs on open murder, specifically tells the parties it's open murder. In instruction number three, the instruction actually reads, this person is charged with open murder. And in instruction four, it specifically says that open murder can consider both first-degree, second-degree, and involuntary manslaughter. Your Honor, I see that I'm out of time. Yeah, you've exceeded your time. Are there any other questions? No. Any questions? Judge Leanne? No, that's okay. Thank you. Thank you, Your Honor. Judge Horwitz? No, I'm trying to puzzle out Nevada procedure, but I'll puzzle it out later. All right. Rebuttal, Your Honors. Perhaps I could start by asking — I'm trying to figure out what's in front of us. You didn't object to the instructions at trial, correct? Trial counsel objected to the inclusion of the third theory, this idea of open murder, which shouldn't have been allowed. He did not object specifically to instruction number 10. Okay. And the habeas petition — this may be background, but the habeas petition doesn't require us to determine whether or not you were not on notice or that Nevada law wasn't complied with in terms of amending the indictment. I think that's correct. To Judge Rawlinson's point, there is a Nevada statute — it's 173.095 — that says that an indictment or information can only be amended before a verdict and if no additional or different offenses were charged. Here we have a slew of different offenses that came. But that was not raised in the Nevada Supreme Court as an error in the case. It wasn't, Your Honor, because it wasn't until its brief in this court that the government made the argument that Ms. Oaks had been charged with open murder when, as Judge Rawlinson points out, in fact, she had not been. Let's assume she wasn't charged with open murder for a moment. We're still focusing on the first-degree felony murder instruction, right? Correct, Your Honor. Because that first-degree felony murder was within the charges that you were charged with. Correct, Your Honor. Okay. All right. Now I'm back on course. I used your minute, so maybe Judge Rawlinson will give you a minute. I will just end with this one point, Your Honor. This isn't a sufficiency-of-the-evidence test. The question is whether this Court can say with fair assurance that the jury was properly instructed, if properly instructed, would have concluded beyond a reasonable doubt of first-degree murder. And that simply is — Is that the Brecht test, or is the Brecht test whether or not the error was substantial and injurious? This Court has two decisions, Riley and then Babb. And I will butcher the names of the respondents in those. They're cited in the reply brief. But in both of those cases, it's sort of this Kaslan instruction idea, which is the argument you're going to get to later today. And it talks about Brecht and all of this together. And the question is, can this Court be assured that the jury, if properly instructed, would have landed where it did? And it simply cannot. Judge Rawlinson, can I ask one more question? Of course. There — because you didn't object — you, the defense. Of course. Obviously, you were there. You would have objected. Of course. Because the defense didn't object at trial to the instruction, and I'm trying to — I was trying to parse out the Nevada Supreme Court decision. I start out by admitting this is not what it says, but I'm asking you whether this is an unreasonable reading of the Nevada Supreme Court decision. Because right before it says you haven't shown any prejudice, your side, it says there was no objection. Could it have been reviewing for plain error? And if so, do we have to give deference to the notion that you — that your side, the defense, hadn't proved prejudice under the plain error standard? I don't believe so, Your Honor. The decision from the Nevada Supreme Court, in my mind, is wholly unreasonable because it concludes all the elements are there, therefore you haven't proved prejudice, when in fact a key term critical to one of the elements is not defined correctly, and it's not defined correctly under Nevada law, under Nevada Supreme Court precedent. That was just a point — And it wasn't — and it wasn't her burden before the Nevada court to establish no prejudice, correct? Correct. Would it have been if this was a — now, I'm trying to write a better decision for the Nevada Supreme Court, but what if they had said you didn't object, plain error requires that the error be plain, and that you demonstrate prejudice, and you haven't demonstrated prejudice? So just assume they said that for a moment. Would that be an unreasonable decision? It would, Your Honor, and it would be an unreasonable decision because of that critical term unquestionably being misdefined, that it simply wasn't correct, and so you have to look at what the lower court found, as the court pointed out, was that not only were the instructions wrong, but it was troubled by the timing of them, too. You have this incorrect definition of a key element, and then the very next instruction says, well, if it's child abuse, it's first-degree murder, and so the Nevada Supreme Court decision to me from top to bottom is unreasonable. Let me just ask you this question. I know we've taken you well over your time, but this is an important case. We have a first-degree murder conviction that we're discussing. So does a plain error review apply to constitutional errors? This feels like a trick question, Your Honor. It's not a trick question. It's not a trick question, I think. I think the answer is yes, but it may be more plain if it's constitutional, but you still – in other words, if somebody raises a claim on appeal that they didn't raise at trial, it may be more plain if the error is constitutional, but we still have to go through the two steps, I think. And I think the plainness is apparent by that Nevada law that very clearly spells out you cannot do this. You cannot have child abuse that has neglect. Everybody should have been on notice. That's a plain error. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments in this challenging case. The case just argued is submitted for decision by the court. The next case, Greenlight Systems v. Breckenfelder, has been submitted on the brief.
judges: Linn, RAWLINSON, HURWITZ